IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

BETTY J. V.,[1]

    Plaintiff,

v.

Commissioner, Social
Security Administration,[2]

    Defendant.

6:17-cv-00878-BR

OPINION AND ORDER

---

[1] In the interest of privacy and pursuant to the recommendation of the Judicial Conference of the United States, this Opinion and Order uses only the first name and the initial of the last name of the nongovernmental parties. The same designation will be used to identify nongovernmental family members named in this case.

[2] The official title of the head of the Social Security Administration (SSA) is the "Commissioner of Social Security." 42 U.S.C. § 902(a)(1). A "public officer who sues or is sued in an official capacity may be designated by official title rather than by name." Fed. R. Civ. P. 17(d). This Court, therefore, refers to Defendant only as Commissioner of Social Security.

1 - OPINION AND ORDER

**JOHN E. HAAPALA, JR.**
401 E. 10th Avenue
Suite 240
Eugene, OR 97401
(541) 345-8474

>Attorney for Plaintiff

**BILLY J. WILLIAMS**
United States Attorney
**RENATA GOWIE**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1003

**MICHAEL W. PILE**
Acting Regional Chief Counsel
**SARAH ELIZABETH MOUM**
Social Security Administration
Office of the General Counsel
701 Fifth Avenue
Suite 2900 MS 221A
Seattle, WA 98104-7075
(206) 615-2531

>Attorneys for Defendant

**BROWN, Senior Judge.**

Plaintiff Betty J. V. seeks judicial review of a final decision of the Commissioner of the Social Security Administration (SSA) in which she denied Plaintiff's applications for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB) under Titles XVI and II of the Social Security Act.

For the reasons that follow, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter.

**ADMINISTRATIVE HISTORY**

Plaintiff filed her application for DIB on May 21, 2012, and her application for SSI on June 13, 2012. Tr. 269, 283.[3] Plaintiff alleged a disability onset date of March 1, 2005. Her applications were denied initially and on reconsideration. An Administrative Law Judge (ALJ) held a hearing on March 27, 2014. Tr. 42-65. At the hearing Plaintiff amended her onset date to October 1, 2009. Tr. 46. Plaintiff and a vocational expert (VE) testified. Plaintiff was represented by an attorney.

On April 11, 2014, the ALJ issued an opinion in which he found Plaintiff is not disabled and, therefore, is not entitled to benefits. Tr. 119-36.

On September 25, 2015, the Appeals Council entered an order in which it remanded the matter to the ALJ and directed the ALJ to "[o]btain additional evidence concerning [Plaintiff's] anxiety disorder. . . . The additional evidence may include . . . a consultative examination and medical source statements about what [Plaintiff] can still do despite the impairments." Tr. 138-39.

On March 24, 2016, an ALJ held a hearing on remand regarding additional evidence as to Plaintiff's anxiety disorder. Tr. 856-73. At the hearing Plaintiff was represented by an attorney. Plaintiff and a VE testified. On April 21, 2016, the ALJ issued

---

[3] Citations to the official transcript of record filed by the Commissioner on November 28, 2017, are referred to as "Tr."

3 - OPINION AND ORDER

a decision on remand in which he found Plaintiff is not disabled and, therefore, she is not entitled to benefits.  Tr. 7-26.  Pursuant to 20 C.F.R. § 404.984(d), that decision became the final decision of the Commissioner on April 24, 2017, when the Appeals Council denied Plaintiff's request for review.  Tr. 1-6.  *See Sims v. Apfel*, 530 U.S. 103, 106-07 (2000).

## BACKGROUND

Plaintiff was born on July 19, 1953.  Tr. 277.  Plaintiff was 62 years old at the time of the hearing.  Plaintiff has a GED.  Tr. 77.  Plaintiff has past relevant work experience as a "material expeditor and expeditor."  Tr. 31.

Plaintiff alleges disability due to depression, high blood pressure, sleep apnea, bipolar disorder, and "history of a stroke."  Tr. 180.

Except when noted, Plaintiff does not challenge the ALJ's summary of the medical evidence.  After carefully reviewing the medical records, this Court adopts the ALJ's summary of the medical evidence.  *See* Tr. 23-24, 27-31.

## STANDARDS

The initial burden of proof rests on the claimant to establish disability.  *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).  To meet this burden, a claimant must demonstrate her

4 - OPINION AND ORDER

inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ must develop the record when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari,* 276 F.3d 453, 459-60 (9th Cir. 2001)).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). *See also Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012). Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Molina*, 674 F.3d. at 1110-11 (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)). "It is more than a mere scintilla [of evidence] but less than a preponderance." *Id.* (citing *Valentine*, 574 F.3d at 690).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). The court must weigh all of the evidence whether it

5 - OPINION AND ORDER

supports or detracts from the Commissioner's decision. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). Even when the evidence is susceptible to more than one rational interpretation, the court must uphold the Commissioner's findings if they are supported by inferences reasonably drawn from the record. *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012). The court may not substitute its judgment for that of the Commissioner. *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

## DISABILITY ANALYSIS

### I. The Regulatory Sequential Evaluation

At Step One the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I). *See also Keyser v. Comm'r of Soc. Sec.*, 648 F.3d 721, 724 (9th Cir. 2011).

At Step Two the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairments or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). *See also Keyser*, 648 F.3d at 724.

At Step Three the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of the

listed impairments that the Commissioner acknowledges are so
severe as to preclude substantial gainful activity. 20 C.F.R.
§§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). *See also Keyser*, 648
F.3d at 724. The criteria for the listed impairments, known as
Listings, are enumerated in 20 C.F.R. part 404, subpart P,
appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, she must
assess the claimant's residual functional capacity (RFC). The
claimant's RFC is an assessment of the sustained, work-related
physical and mental activities the claimant can still do on a
regular and continuing basis despite her limitations. 20 C.F.R.
§§ 404.1520(e), 416.920(e). *See also* Social Security Ruling
(SSR) 96-8p. "A 'regular and continuing basis' means 8 hours a
day, for 5 days a week, or an equivalent schedule." SSR 96-8p,
at *1. In other words, the Social Security Act does not require
complete incapacity to be disabled. *Taylor v. Comm'r of Soc.
Sec. Admin.*, 659 F.3d 1228, 1234-35 (9th Cir. 2011)(citing *Fair
v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989)).

At Step Four the claimant is not disabled if the
Commissioner determines the claimant retains the RFC to perform
work she has done in the past. 20 C.F.R. §§ 404.1520(a)(4)(iv),
416.920(a)(4)(iv). *See also Keyser*, 648 F.3d at 724.

If the Commissioner reaches Step Five, she must determine
whether the claimant is able to do any other work that exists in

the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v),
416.920(a)(4)(v).  *See also Keyser*, 648 F.3d at 724-25.  Here the
burden shifts to the Commissioner to show a significant number of
jobs exist in the national economy that the claimant can perform.
*Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th
Cir. 2010).  The Commissioner may satisfy this burden through the
testimony of a VE or by reference to the Medical-Vocational
Guidelines set forth in the regulations at 20 C.F.R. part 404,
subpart P, appendix 2.  If the Commissioner meets this burden,
the claimant is not disabled.  20 C.F.R. §§ 404.1520(g)(1),
416.920(g)(1).

## ALJ'S FINDINGS

At Step One the ALJ found Plaintiff has not engaged in substantial gainful activity since her March 1, 2005, alleged onset date.[4]  Tr. 12.

At Step Two the ALJ found Plaintiff has the severe impairments of avoidant and paranoid personality disorder, depression, and anxiety.  Tr. 13.  The ALJ found Plaintiff's scleritis, hypothyroidism, hypertension, and Asperger's Syndrome are not severe.  Tr. 13.

---

[4] Although Plaintiff amended her onset date to October 1, 2009, at the first hearing, the ALJ found at Step One that Plaintiff had not engaged in substantial gainful activity since her original onset date.

8 - OPINION AND ORDER

At Step Three the ALJ concluded Plaintiff's medically determinable impairments do not meet or medically equal one of the listed impairments in 20 C.F.R. part 404, subpart P, appendix 1. Tr. 13. The ALJ found Plaintiff has the RFC to perform a full range of work at all exertional levels with the following nonexertional limitations: Plaintiff "is limited to simple, repetitive, routine tasks that require no more than occasional interaction with superiors and co-workers - and no interaction with the general public." Tr. 15.

At Step Four the ALJ concluded Plaintiff cannot perform her past relevant work. Tr. 18.

At Step Five the ALJ found Plaintiff can perform jobs that exist in significant numbers in the national economy. Tr. 19. Accordingly, the ALJ found Plaintiff is not disabled.

## DISCUSSION

Plaintiff contends the ALJ erred when he (1) partially rejected Plaintiff's testimony and (2) gave only "partial weight" to the opinion of examining psychologist Claudia Lake, Psy.D.

**I. The ALJ did not err when he partially rejected Plaintiff's testimony.**

Plaintiff alleges the ALJ erred when he failed to provide clear and convincing reasons for partially rejecting Plaintiff's testimony.

In *Cotton v. Bowen* the Ninth Circuit established two

9 - OPINION AND ORDER

requirements for a claimant to present credible symptom testimony: The claimant must produce objective medical evidence of an impairment or impairments, and she must show the impairment or combination of impairments could reasonably be expected to produce some degree of symptom. *Cotton*, 799 F.2d 1403 (9th Cir. 1986), *aff'd in Bunnell v. Sullivan*, 947 F.2d 341 (9th Cir. 1991). The claimant, however, need not produce objective medical evidence of the actual symptoms or their severity. *Smolen*, 80 F.3d at 1284.

If the claimant satisfies the above test and there is not any affirmative evidence of malingering, the ALJ can reject the claimant's pain testimony only if he provides clear and convincing reasons for doing so. *Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007)(citing *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)). General assertions that the claimant's testimony is not credible are insufficient. *Id*. The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. (quoting *Lester*, 81 F.3d at 834).

At the first hearing Plaintiff testified she "started having difficulties in the workplace, being singled out for scapegoating" in "the early 2000's [*sic*]." Plaintiff began a one-year volunteer position in September 2008, but she began working from home in that job before the end of September 2009 because she "became extremely anxious in the workplace and . . .

10- OPINION AND ORDER

realized [she] couldn't exist there." Tr. 49-50. Plaintiff stated she would "break down crying sometimes and it was terribly embarrassing. . . . I didn't have any control over it." Tr. 50. Plaintiff testified she has not looked for work since September 2009 because she does not "think that [she] [is] strong enough to go back to the workplace." Tr. 51. Plaintiff noted she is on medication and receiving treatment for her problems through the Veterans' Administration, and "it's helping but not quickly. . . . I can see small bits of progress, but some things are just starting to appear." Tr. 52. Plaintiff stated she is still "very uncomfortable with people . . . [and] amazingly shy." Tr. 52. Plaintiff testified she lives alone, does not go to church, does not have any friends, and does not interact with her neighbors.

At the second hearing Plaintiff testified she is "still experiencing a lot of anxiety but [she has] been making some headway and established some - establishing relationships." Tr. 862. Plaintiff stated she attends Alcoholics Anonymous (AA) meetings twice a week and has a sponsor to whom she relates well and "occasionally get[s] together with." Tr. 862. Plaintiff testified she has started going to church on Sundays and has "found that to be a good experience with a lot of good-hearted people." Tr. 862. Plaintiff also goes to therapy weekly. Plaintiff noted she still likes to be alone, but she now has more

social contact. Plaintiff, however, testified she did not believe she would be able to get through a job interview without "having an episode." Tr. 863. Plaintiff stated she had a panic attack in 2014 when she received the first ALJ's hearing determination. Tr. 864.

The ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not" credible. Tr. 16.

The ALJ also adopted and incorporated the reasoning of the previous ALJ, including the fact that Plaintiff did not seek mental-health treatment until late 2012 even though her original onset date was March 1, 2005, and her amended onset date is October 1, 2009. In addition, on August 20, 2012, Charles Reagan, M.D., conducted a disability examination of Plaintiff and noted he did not observe any Asperger's symptoms. Tr. 403. Dr. Reagan found Plaintiff had "some mild difficulty with concentration" and "social phobia." Tr. 404. Dr. Reagan

assessed Plaintiff with a GAF of 55-60.[5]  At some point before January 2013 treating psychiatrist, Scott Mendelson, Psy.D., prescribed Plaintiff hydroxyzine as needed for her anxiety.  In January 2013 Plaintiff reported to her counselor, John Benson, that the hydroxyzine was helping.  Plaintiff reported "being involved with a twelve step group and having gone to a speakers meetings where she connected with some out of town speak[ers] from Calif[ornia]."  Tr. 446.  In March 2013 Dr. Mendelson reported Plaintiff was "doing a bit better, largely from having the hydroxyzine available as a prn, and from her counseling."  Tr. 444.  Throughout 2013 the record reflects Plaintiff continued to improve with counseling and medication.  For example, Plaintiff reported to Benson that she was "doing well," she had "checked about [a] conference for her field . . . being held in . . . CA in July," and she had "sent off her application to . . . school."  Tr. 607.  In June 2013 Plaintiff reported to Benson that she felt she was "making progress and hopes to get

---

[5] Although the fifth edition of the *Diagnostic and Statistical Manual of Mental Disorders* issued May 27, 2013, abandoned the GAF scale in favor of standardized assessments for symptom severity, diagnostic severity, and disability, at the time of Plaintiff's assessment the GAF scale was used to report a clinician's judgment of the patient's overall level of functioning.  *Diagnostic and Statistical Manual of Mental Disorders IV* (DSM-IV) 31-34 (4th ed. 2000)).  In the fourth edition, a GAF of 51-60 indicated moderate symptoms (*e.g.*, flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (*e.g.*, few friends, conflicts with peers or co-workers).

13- OPINION AND ORDER

out to more socially oriented group meetings to make acquaintances." Tr. 604. In September 2013 Dr. Mendelson reported Plaintiff was cheerful. Plaintiff stated she had not needed the hydroxyzine "lately" even though she continued to feel "awkward" around people at times. Tr. 596.

The record reflects Plaintiff continued to make progress in 2014. For example, in February 2014 Plaintiff reported to Benson that she continued to attend AA meetings and report[ed] a positive experience that she will probable [*sic*] repeat for expanding her social contact." Tr. 588. Plaintiff also reported "sharing some xmas gifts with a few friends she has known in the past." Tr. 588. On June 6, 2014, Dr. Mendelson reported Plaintiff was "doing pretty good. She is clearly better than she was [before she] started the fluoxetine. She feels the fluoxetine is helping her. 'I feel good now.'" Tr. 758. On June 27, 2014, Plaintiff reported to Benson that she "feels that she has settled into a pace and a lifestyle that she is comfortable with. She has moved forward with her artistic skills and made efforts to connect to the artistic community." Tr. 770. In July 2014 Dr. Mendelson reported Plaintiff "is showing improvement in mood and with anxiety. She is becoming more social." Tr. 756. In December 2014 Dr. Mendelson reported Plaintiff is "doing good." Tr. 754. Plaintiff "is not taking the fluoxetine anymore. She says she feels fine without it."

14- OPINION AND ORDER

Tr. 754. Dr. Mendelson assessed Plaintiff as "stable, even after having stopped fluoxetine." Tr. 755.

The record reflects Plaintiff continued to improve throughout 2015. For example, on May 14, 2015, Plaintiff reported to counselor Gayle Goldblatt, LCSW, that she "attended an AA meeting in Coquille and felt comfortable and positive about the experience." Tr. 623. On May 21, 2015, Plaintiff reported to LCSW Goldblatt that she "has been more sociable lately which feels positive and healthy. . . . [S]he is trying not to isolate and is interacting with community members more." Tr. 624. In September 2015 Plaintiff reported to LCSW Goldblatt that she "has started a new friendship with a married woman she met in AA." Tr. 635. On September 30, 2015, LCSW Goldblatt noted Plaintiff "is showing growth in her own recovery process and the ability to care for herself." Tr. 636. On October 21, 2015, Plaintiff reported to Nurse Practitioner (NP) Rory Austin that she was "feeling significantly better on the mh med combination added, reports escitalopram helps depression and buspar helps mood with no side effects." Tr. 704-05.

On this record the Court concludes the ALJ did not err when he partially rejected Plaintiff's testimony because the ALJ provided clear and convincing reasons supported by substantial evidence in the record for doing so.

15- OPINION AND ORDER

**II. The ALJ did not err when he only gave "partial weight" to Dr. Lake's opinion.**

Plaintiff asserts the ALJ erred when he only gave "partial weight" to Dr. Lake's November 2015 opinion.

An ALJ may reject an examining physician's opinion when it is inconsistent with the opinions of other treating or examining physicians if the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002)(quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). When the medical opinion of an examining physician is uncontroverted, however, the ALJ must give "clear and convincing reasons" for rejecting it. *Thomas*, 278 F.3d at 957. *See also Lester v. Chater*, 81 F.3d 821, 830-32 (9th Cir. 1996).

On November 19, 2015, Dr. Lake conducted a consultative examination of Plaintiff. Dr. Lake noted Plaintiff's "immediate memory appears to be mildly impaired." Tr. 611. Nevertheless, Dr. Lake concluded Plaintiff would not have difficulty performing "detailed and complex tasks," "performing work activities on a consistent basis without special or additional instruction," or "maintaining regular attendance in the workplace." Tr. 613. Dr. Lake diagnosed Plaintiff with persistent depressive disorder and avoidant personality disorder. Dr. Lake concluded Plaintiff

would have difficulty "accepting . . . instructions from supervisors," interacting with coworkers and the public, completing a normal workday/workweek without interruptions from a psychiatric condition, and "dealing with usual stress encountered in the workplace." Tr. 613. Dr. Lake completed a Medical Source Statement in which she noted Plaintiff was moderately limited in her ability to interact appropriately with the public, supervisors, and coworkers and mildly limited in her ability to respond appropriately to "usual work situations."

The ALJ gave partial weight to Dr. Lake's opinion and noted Plaintiff's history

> reasonably supports a restriction to tasks that avoid working with the public, and that involve no more than occasional social interaction with co-workers and supervisors. Nevertheless, Dr. Lake's opinion regarding [Plaintiff's] ability to understand, remember, and carry out instructions is not consistent with [Dr. Lake's] own clinical observation of decreased memory functioning.

Tr. 17. The ALJ assessed Plaintiff with greater limitations in concentration, persistence, and pace than those assigned by Dr. Lake. Plaintiff asserts the ALJ, nevertheless, erred because he failed to include in his evaluation of Plaintiff's RFC Dr. Lake's opinion that Plaintiff would not be able to complete a workday or workweek without interruption or "deal[] with usual stress encountered in the workplace." The ALJ, however, noted Dr. Lake's opinion and to Plaintiff's ability to complete a workday or workweek without interruption or deal with the routine

17- OPINION AND ORDER

stress encountered in the workplace were based on Plaintiff's problems interacting with supervisors, coworkers, and the public, all of which the ALJ accounted for in his assessment of Plaintiff's RFC. The ALJ limited Plaintiff to no more than occasional interaction with superiors and coworkers and no interaction with the public. The ALJ's assessment comports with Dr. Lake's Medical Source Statement in which she found Plaintiff moderately limited in her ability to interact appropriately with the public, supervisors, and coworkers and mildly limited in her ability to respond appropriately to routine work situations.

The Court concludes on this record that the ALJ did not err when he gave partial weight to Dr. Lake's opinion because the ALJ provided clear and convincing reasons supported by substantial evidence in the record for doing so.

## CONCLUSION

For these reasons, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter pursuant to sentence four of 42 U.S.C. § 405(g).

IT IS SO ORDERED.

DATED this 31st day of May, 2018.

/S/ Anna J. Brown

ANNA J. BROWN
United States Senior District Judge

18- OPINION AND ORDER